UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIK HALIL NARDINI,

                Petitioner,

v.

JEFF TANNER,

                Respondent.

_____/

Case No. 2:25-cv-13240

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER (1) DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Erik Halil Nardini, confined at the Macomb Correctional Facility in Lenox Township, Michigan, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for kidnapping, Mich. Comp. Laws § 750.349(1)(d), and absconding on bond, Mich. Comp. Laws § 750.199a. As explained below, Nardini's petition will be dismissed with prejudice and this Court will decline to issue a certificate of appealability but grant Nardini leave to appeal *in forma pauperis*.

## I. BACKGROUND

Petitioner Erik Halil Nardini was convicted following a jury trial in the St. Clair County Circuit Court. This Court recites verbatim the relevant facts relied upon

by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case started with Nardini kidnapping LN, his biological child, in early January 2023.[1] Nardini and his estranged wife, Patricia Nardini (Patricia), were LN's biological parents. Nardini and Patricia never divorced. But their marriage was moribund by the time of the events in this case. After a fraught and hostile relationship, Nardini took physical custody of LN. There was not a formal custody agreement or court order. Rather, after a period of shared custody, Patricia wrote Nardini a letter agreeing to give him sole custody. Nardini claimed that she wrote the letter voluntarily. Patricia claimed that she wrote or signed the letter under duress.
>
> In March 2022, Patricia tried to contact Nardini to spend time with LN, but Nardini refused. She hired a private investigator to locate LN. She also tried to serve a personal protective order (PPO) and divorce summons on Nardini.
>
> On Friday, January 6, 2023, St. Clair Shores Police arrested Nardini following a dispute and confrontation with Patricia over a recreational vehicle (RV) she was trying to sell. Patricia alleged that during the confrontation, Nardini tried to run her over with his vehicle and that he later stole the RV. Nardini was charged and jailed related to the RV incident.
>
> While Nardini was incarcerated, Patricia unsuccessfully tried to retrieve LN. She contacted St. Clair Shores Police and requested that they conduct a wellness check. She also tried to retrieve LN from the house of Nardini's friend, Laurianne Hunsanger. Patricia told Hunsanger that she was present at her house to get LN because Nardini was not able to take care of her.

---

[1] Because the victim was a minor at the time of the offense, the Court will refer to her by her initials only as the Michigan Court of Appeals did to preserve her privacy. See Fed. R. Civ. P. 5.2(a).

Meanwhile, Nardini called Hunsanger from jail and told her not to give LN to Patricia. And the Michigan State Police (MSP) contacted Hunsanger and informed her that she needed to return LN to Patricia. When Hunsanger told Nardini about the police, Nardini told her not to return LN, to take her to another location, and to keep her hidden.

On Monday, January 9, 2023, Patricia acquired an ex parte order requiring that Nardini return LN to Patricia. The order was effective immediately. It stated, "Ex-parte Order for Minor Child to be Returned to the Plaintiff's Care Until Further Order of the Court." Nardini was still in police custody. A process server served the ex parte order, a PPO, and a divorce summons on Nardini at the jail.

That same day, Nardini was released from jail on bond with instructions to remain in the state. After his release, and with the help of Hunsanger, Nardini took LN and drove to Ohio. He took various steps to avoid detections or being seen with LN. For example, when Hunsanger drove with LN to the St. Clair County Jail parking lot to pick up Nardini following his release, she received a phone call from a different inmate instructing her to leave the St. Clair County Jail parking lot and go to a Walmart or to a McDonalds. Nardini later told Hunsanger to turn off her phone and suggested other ways to covertly communicate. They later met at a fast food restaurant, where Nardini took control of LN. At trial, when asked if LN was free to leave at that time, Nardini testified that "[s]he was buckled in her car seat." "Yeah. I'm sure she was buckled in."

Nardini left Michigan for Ohio. He arranged to stay with friends in Clyde, Ohio before driving farther south toward Dayton, Ohio. After leaving Clyde, friends that Nardini stayed with contacted him about an alert regarding LN that they saw on social media. One friend encouraged Nardini to turn LN in, but Nardini refused. He explained that he needed to shut off his phone to avoid being traced.

Ohio State Highway Patrol officers arrested Nardini in Auglaize County, Ohio on January 10, 2023. At the time of Nardini's arrest, LN was in the back seat of his car. Nardini told the arresting officer that he did not intend to permanently leave Michigan. But he admitted to leaving the state despite receiving strict orders not to do so at his arraignment.

*People v. Nardini*, No. 366605, 2025 WL 391462, at *1–2 (Mich. Ct. App. Jan. 31, 2025), *lv. den.* 20 N.W.3d 569 (Mich. 2025) (internal footnotes omitted).

Nardini now seeks a writ of habeas corpus on the following grounds: (1) the verdict was against the great weight of the evidence, (2) the evidence was insufficient to convict Petitioner of kidnapping, and (3) the trial court erred in scoring prior record variable (PRV) 5 and offense variables (OV) 4, 10, and 14 of the Michigan Sentencing Guidelines; alternatively, trial counsel was ineffective for failing to provide evidence to challenge the scoring of PRV 5 and for failing to object to OV 14.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

- 4 -

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

## III. DISCUSSION

## A. Exhaustion and Procedural Default

As a threshold matter, Respondent argues that Nardini's first and third claims are unexhausted because he never presented these claims in his application for leave to appeal to the Michigan Supreme Court. Respondent also argues that these claims are procedurally defaulted because Nardini failed to object to these errors at the trial court level and as a result, the Michigan Court of Appeals reviewed these two unpreserved claims for plain error only. Respondent further argues that Nardini's claim that the prosecutor abused his discretion by charging him with kidnapping is procedurally defaulted because the Michigan Court of Appeals concluded that the issue was waived for appellate review because Nardini did not include this claim in the Statement of Questions section of his appeal brief.

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Likewise, procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Thus, because—as explained below—Nardini's claims are meritless, this Court will proceed to adjudicate all of Nardini's claims, including those claims that were not exhausted or procedurally defaulted.

### B. Claims 1 and 2[2]: Weight and Sufficiency of the Evidence

### 1. Weight of the Evidence

Petitioner argues in his first claim that he is entitled to habeas relief because the guilty verdict went against the great weight of the evidence.

---

[2] Because Nardini's first two claims are related, this Court will discuss both claims together.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); *Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003).

Thus, the test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was *any* evidence to support it. *Dell,* 194 F. Supp. 2d at 648. In this way, as long as there is some evidence to convict a petitioner of the crime, for federal habeas purposes, it does not matter whether the verdict may have gone against the great weight of the evidence. *Id.* Other circuit courts have held that a claim that the jury verdict in a state criminal trial went against the great weight of the evidence is non-cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Correctional Facility*, 422 F. App'x

- 8 -

69, 75 (2d Cir. 2011); *Young v. Kemp*, 760 F. 2d 1097, 1105 (11th Cir. 1985). Because the Supreme Court has never recognized a state prisoner's constitutional right to a new trial because the verdict was against the great weight of the evidence, Nardini's claim that the verdict went against the great weight of the evidence fails to state a cognizable federal claim. *Squalls v. Macauley*, No. 4:23-CV-11541, 2024 WL 3799313, at *3 (E.D. Mich. Aug. 13, 2024) (citing *Walker v. Curtin*, No. 1:10–cv–1267; 2011 WL 285152, * 3 (W.D. Mich. Jan. 5, 2011)).

As part of his first claim, Nardini argues that the prosecutor abused their discretion in charging Petitioner with kidnapping as opposed to violating Michigan's parental taking statute, Mich. Comp. Laws § 750.350a.

The Supreme Court "has long recognized" that when a criminal act violates more than one criminal statute, the Government may prosecute under either statute so long as it does not discriminate against any class of defendants. *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979). Prosecutors therefore enjoy considerable discretion in determining what criminal charges to bring. *Id.; See also Grant v. Rivers*, 920 F. Supp. 769, 787 (E.D. Mich. 1996). Prosecutors may be influenced by the penalties available on conviction in making a charging decision. This fact, in and of itself, does not give rise to a constitutional violation. *Batchelder*, 442 U.S. at 125. Criminal defendants have no constitutional right to elect which of two crimes will

be the basis for a criminal information, nor are they entitled to choose the penalty scheme under which they will be sentenced. *Id.*

Although the Michigan Court of Appeals found that Nardini had waived this issue by not including it in the Statement of Questions section of his appeal brief, the Michigan Court of Appeals also held that there was no abuse of discretion under Michigan law in charging Nardini with kidnapping as opposed to parental taking because the crime of kidnapping had different elements than the crime of parental taking. *People v. Nardini*, 2025 WL 391462, at * 5, n. 4. This ruling is binding on this Court sitting on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Petitioner is not entitled to habeas relief on his first claim.

## 2. Sufficiency of the Evidence

In his second claim, Nardini argues that there was insufficient evidence to convict him of kidnapping.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at

the trial established guilt beyond a reasonable doubt." *Id*. Instead, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the requisite elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court gives circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").

More importantly, a federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to

be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Nardini was convicted of kidnapping under Mich. Comp. Laws § 750.349(1)(d). This subsection of Michigan's kidnapping statute provides that:

> (1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:
> * * *
> (d) Take that person outside of this state.

*Id.* Nardini's kidnapping charge thus had two elements: (1) knowing restraint, and (2) intent to take a person out of the state. *People v. Nardini*, 2025 WL 391462, at *4.

Section 750.349(2) defines restraint, for the purposes of Michigan's kidnapping statute as:

> to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

The Michigan Court of Appeals rejected Nardini's claim that the evidence was insufficient to convict him of kidnapping:

On appeal, Nardini focuses his sufficiency-of-the-evidence argument on the element of restraint. The prosecution satisfied this element. Patricia stated that on January 9, 2023, while Nardini was still incarcerated, she went to her attorney to seek an ex parte order for LN's return. The ex parte order provided, "Ex-parte Order for Minor Child to be Returned to the Plaintiff's Care Until Further Order of the Court." The order was served on Nardini in jail before his release. So, when Nardini took LN, he did so without legal authority, satisfying part of the statutory definition of "restraint," i.e., without lawful authority.

If that were not enough, Nardini's own testimony provided evidence of restraint. At trial Nardini stated that he took control of LN at a fast food restaurant, put her in her car seat, and buckled her in. When asked if LN was free to leave, Nardini replied "[s]he was buckled in her car seat." "Yeah. I'm sure she was buckled in." When the prosecution asked Nardini, "You weren't going to let her wander off out of that car seat and start walking down the road, were you?" Nardini replied, "Absolutely not." In short, he intended to take LN wherever he wanted, "no matter what LN would have said ... [.]" These actions meet the statutory definition of restraint because LN's movements were restricted and she was confined.

Further, police found and arrested Nardini outside of the state of Michigan. During his arrest, he admitted to taking LN outside of the state, thus satisfying the relevant remaining element of kidnapping. See MCL 750.349(1)(d). Therefore, Nardini cannot establish that there was insufficient evidence underpinning his kidnapping conviction. Drawing all reasonable inferences in favor of the prosecution, a reasonable jury would find the elements satisfied.

*People v. Nardini*, 2025 WL 391462, at *4.

The Michigan Court of Appeals' determination that there was sufficient evidence to convict Nardini of kidnapping was reasonable based on the facts of this case. Nardini is thus not entitled to habeas relief on this claim.

To the extent that Nardini argues that the evidence was insufficient to convict him because his actions, even if true, did not violate Michigan's kidnapping statute, he is not entitled to habeas relief.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. at 76. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Sanford,* 288 F. 3d at 862 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes and possible defenses. *See e.g. Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). To the extent that Nardini's argument is a state law claim disguised as a sufficiency of evidence claim, it is non-cognizable on habeas review. *See Powell v. Berghuis*, 560 F. App'x 442, 449 (6th Cir. 2013). Thus, at bottom, Nardini is not entitled to habeas relief on his second claim.

- 14 -

### C. Claim 3: Sentencing Guidelines and Ineffective Assistance of Counsel

In this third claim, Nardini argues that the trial judge erred in the scoring of his sentencing guidelines range under the Michigan Sentencing Guidelines for the kidnapping conviction.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Nardini's claim that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Thus, Nardini's claim that the state trial court improperly departed above the proper sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of his federal due process rights. *See Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000). This is particularly so in light of the fact that even if the judge departed above what Nardini argues should have been the correct sentencing guidelines range on the minimum sentence, Nardini's maximum sentence of 20 to 60 years was within the statutory range for the

kidnapping offense of which he was convicted. *See Simpson v. Warren*, 662 F. Supp. 2d 835, 851 (E.D. Mich. 2009), *aff'd*, 475 F. App'x 51 (6th Cir. 2012).[3]

Nardini, however, also argues that the trial court erred in assessing him five points under Prior Record Variable 5 for his prior 2019 misdemeanor conviction for jostling because he was unrepresented by counsel in that case. The Michigan Court of Appeals rejected this claim, first, because Nardini did not offer proof that he was unrepresented by counsel with respect to his 2019 conviction and the court records from that case were unclear as to whether Nardini was represented by an attorney or whether he had waived his right to counsel. *People v. Nardini*, 2025 WL 391462, at *8. The Michigan Court of Appeals also noted that Nardini received only fines and costs with respect to his 2019 misdemeanor conviction. Because Nardini did not receive any jail time on his 2019 jostling conviction, the Michigan Court of Appeals concluded that it was proper for the trial court to use this prior misdemeanor conviction in scoring Petitioner's prior record variable. *Id.*

In a criminal case in which no sentence of imprisonment was imposed, a defendant charged with a misdemeanor has no constitutional right to the assistance of counsel. *See Nichols v. U.S.*, 511 U.S. 738, 743 (1994) (citing *Scott v. Illinois*, 440 U.S. 367 (1979)). An uncounseled misdemeanor conviction, valid due to the

---

[3] Michigan's Sentencing Guidelines, unlike the federal sentencing guidelines, only provide for a minimum sentence; the maximum is determined by statute. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010).

absence of the imposition of a jail or prison term, is also valid when used to enhance punishment for a subsequent conviction. *Id.* at 746-47. Thus, because Nardini was not sentenced to a term of incarceration for his 2019 misdemeanor offense, even if uncounseled, this offense could validly be used to enhance his current sentence.

Nardini also argues that counsel was ineffective for failing to present adequate evidence to the trial court to establish that he was unrepresented by counsel in his 2019 jostling conviction so as to prevent this offense from being used to assess Petitioner five points under PRV 5. Nardini also alleges that trial counsel was ineffective for failing to object to OV 14.

A habeas petitioner may seek habeas relief on a claim that counsel was ineffective in failing to challenge the scoring of the Michigan Sentencing Guidelines. *See Kissner v. Palmer*, 826 F.3d at 904. A defendant must satisfy a two-prong test to show that he was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance

- 17 -

prejudiced his defense. *Id*. A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

A defendant has the right to the effective assistance of counsel at sentencing in both noncapital and capital cases. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Id.* (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

Counsel did object to the trial judge using Petitioner's 2019 misdemeanor conviction in scoring PRV 5 of the Michigan Sentencing Guidelines on the ground that Petitioner was unrepresented by counsel. Nardini, however, argues that trial counsel was ineffective for failing to present sufficient evidence to establish that he was unrepresented by counsel for his 2019 misdemeanor conviction. As mentioned above, Petitioner did not receive a jail sentence for his 2019 conviction. Thus, under *Nichols*, it was not improper for the trial court to use Petitioner's 2019 misdemeanor conviction to score Nardini's sentencing guidelines, hence, Nardini's counsel was not ineffective in failing to adequately raise an objection to the judge's use of this

- 18 -

conviction at sentencing. *See United States v. Johnson*, No. 14-20119, 2020 WL 6198375, at *4 (E.D. Mich. Oct. 22, 2020), *aff'd*, 64 F.4th 715 (6th Cir. 2023).

Regarding OV 14, the Michigan Court of Appeals concluded that this offense variable was correctly scored, hence, counsel was not ineffective for failing to object to the scoring of this offense variable. *People v. Nardini*, 2025 WL 391462, at *10–11.

The Michigan Court of Appeals concluded that OV 14 was correctly scored under Michigan law. Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," the Court is constrained to reject this portion of Nardini's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). The Michigan Court of Appeals rejected Nardini's sentencing guidelines claim. Nardini is therefore unable to show that he was prejudiced by trial counsel's purported ineffectiveness in failing to challenge the scoring of OV 14. *See, e.g., Coleman v. Curtin*, 425 F. App'x 483, 485 (6th Cir. 2011).

At bottom, Nardini is not entitled to habeas relief on his third claim either. Thus, his petition for a writ of habeas corpus will be denied with prejudice.

**D. Certificate of Appealability and Proceeding *in forma pauperis* on Appeal**

As a final administrative matter, this Court will deny a certificate of appealability but grant Nardini permission to proceed *in forma pauperis* on appeal.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, a certificate of appealability will be denied because Petitioner has not made a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

However, if Petitioner chooses to appeal this Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3). *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Nardini's Petition for a Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a Certificate of Appealability is **DENIED**.

Further, it is **ORDERED** that Nardini is **GRANTED LEAVE** to proceed *in forma pauperis* on appeal.

**This is a final order and closes the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 21, 2026

- 21 -